IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| FELDON BUSH | CIVIL ACTION |
|---|---|
| v. | NO. 17-805 |
| CHRISTOPHER HULMES and THE CITY OF PHILADELPHIA | |

Baylson, J.                                                                           May 18, 2018

## MEMORANDUM RE: MOTIONS FOR SUMMARY JUDGMENT

### I. Factual and Procedural Background

In this action, initiated on February 21, 2017, Plaintiff Bush alleges that his Fourth Amendment rights were violated as a result of malicious prosecution by Christopher Hulmes ("Hulmes") and policies, customs, omissions, and deliberate indifference of the City of Philadelphia ("the City"). The allegations, brought pursuant to 42 U.S.C. § 1983, relate to Plaintiff's arrest and subsequent prosecution for narcotics and firearms offenses.

On May 5, 2017, the City filed an Answer to the Complaint, and Hulmes filed a Motion to Dismiss on May 6, 2017. (ECF 6, 11). The Court later denied the Motion to Dismiss as moot in light of Plaintiff's representation that his complaint alleges a single count of malicious prosecution, and does not seek relief for any alleged unlawful arrest, search, or use of force. (ECF 16). Thereafter, Hulmes filed an Answer on July 18, 2017. (ECF 17).[1] The Court presently considers motions for summary judgment filed by Hulmes and the City. (ECF 26, 27).

---

[1] A later dispute arose over an expert report submitted by Plaintiff to Defendants, but the Court denied the Motion to Strike the Expert Report and the expert report at issue in that dispute was not presented to the Court with respect to the present motions. (ECF 28).

### A. Arrest and Prosecution of Plaintiff

Plaintiff's complaint alleges that his arrest on May 25, 2007 was based on false information provided by Hulmes. (Complaint ("Compl."), ECF 1, ¶ 7). Following the arrest, Plaintiff was charged with, *inter alia*, possession of narcotics, possession of narcotics with intent to distribute, criminal conspiracy, and violations of the Uniform Firearms Act. (City Statement of Facts ("City SOF"), ECF 27-1, ¶ 44). Following a jury trial held in April, 2010, Plaintiff was convicted of possession of narcotics with intent to deliver and criminal conspiracy. (Id. ¶ 50). In June, 2010, Plaintiff was sentenced to 5-10 years imprisonment for possession of narcotics with intent to distribute and one year of consecutive probation for criminal conspiracy. (Id. ¶ 51). Plaintiff has consistently maintained his innocence of all charges. (Id. ¶ 52).

### B. Accusation and Dismissal of Hulmes

Between the time of Plaintiff's arrest and his trial, on August 21, 2008, Hulmes was "accused by" a Philadelphia Assistant District Attorney ("ADA") of misconduct. The ADA alleged that, in a narcotics and firearms possession case, Hulmes told her just prior to trial that the firearm at issue had been recovered inside the criminal defendant's home, but that Hulmes had previously told her the firearm was found in an alley (and lied in official police paperwork) "in order to help [the defendant] who had been a good informant in the past." (Id. ¶ 92(a)(ii)). The allegations were investigated by the Philadelphia Police Department's ("PPD") Internal Affairs Bureau ("IAB") and the allegations were not sustained. (Id. ¶ 92(a)(ii), (a)(viii)).

Four years after Plaintiff's trial and sentencing, on August 4, 2014, Hulmes was again accused of lying in connection with a criminal case unrelated to Plaintiff's. (Id. ¶ 93). The accusation, emailed to the PPD's Public Affairs Division by a Staff Writer for Philadelphia City

Paper, stated that, "[o]n January 24, 2012, Judge James Murry Lynn granted a motion to suppress in CP-51-CR-0007188-2010 because Officer Christopher Hulmes [] admitted to lying to an issuing magistrate and in his preliminary hearing." (Id.). During the ensuing investigation, Hulmes was arrested. (Id. ¶ 95). IAB determined that Hulmes had provided false testimony under oath, and he was dismissed from the PPD on May 26, 2015. (Id. ¶ 96).

### C. Release of Plaintiff

Plaintiff filed a petition for relief under the Post-Conviction Relief Act ("PCRA") on July 27, 2016, which was granted on January 30, 2017. That same day, the Philadelphia District Attorney's Office ("DAO") *nolle prossed*[2] Plaintiff's conviction. (City SOF, ¶ 55). Despite declaring *nolle prosequi*, the DAO did not state on the record any judgment as to Plaintiff's guilt or innocence with respect to the crimes for which Plaintiff was convicted and sentenced in 2010. (Id. ¶ 58).

### II. Parties' Arguments

In Hulmes' Motion for Summary Judgment (ECF 26), he contends that Plaintiff's claim for malicious prosecution fails because Plaintiff cannot establish: (1) that the criminal charges against him were terminated in his favor, (2) that the prosecution was initiated without probable cause, and (3) Hulmes is entitled to qualified immunity because Hulmes' conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known .

---

[2] The legal ramifications of a prosecutorial decision to declare *nolle prosequi* will be discussed *infra*. It is generally translated from Latin as "be unwilling to pursue," and it is considered a form of "voluntary dismissal." See Com. v. Whitaker, 467 Pa. 436, 442 (1976); Malcomb v. McKean, 535 F. App'x 184, 186 n. 2 (3d Cir. 2013).

The City's Motion for Summary Judgment (ECF 27) echoes the first two arguments mentioned above, and adds that Plaintiff's municipal liability claim against the City should likewise fail because: (1) no one within the PPD had notice of Hulmes' false testimony prior to Plaintiff's arrest and trial (Hulmes' false testimony in 2012 occurred after Plaintiff's trial in 2010); (2) Plaintiff has not presented record evidence of any municipal policy or custom that caused his alleged harms; and (3) Plaintiff has not presented record evidence showing that a municipal "policymaker" was deliberately indifferent to his rights.

Plaintiff submitted responses to both motions (ECF 29, 30), which are jointly summarized below. Plaintiff asserts that the criminal prosecution was terminated in his favor because the *nolle prosequi* was not a result of any agreement or compromise between the parties. Additionally, Plaintiff asserts that because he is factually innocent of the charges, there was no probable cause to initiate a criminal prosecution against him. Finally, citing an attached expert report, Plaintiff contends that his claim against the City should not be dismissed at this stage because the City itself was "deliberately indifferent" to "a custom of acceptance of falsification, cover up and unbalanced IAD investigation led to Plaintiff's harm." (ECF 30, Response to MSJ, at 10, 12).

In their Reply briefs (ECF 31 and 32), the City and Hulmes contend: (1) a *nolle prosequi* which arises without agreement between the parties can be sufficient to preclude the favorable termination requirement for malicious prosecution; (2) on the record, probable cause existed for Plaintiff's arrest in 2007; (3) Hulmes is entitled to qualified immunity; (4) the expert report submitted as part of Plaintiff's response was not accompanied by a statement that it was prepared under penalty of perjury and thus it should not be considered; and (5) the expert report invades the province of the factfinder by expressing conclusory legal opinions.

### III.     Legal Standard

A district court should grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must, "by citing to particular parts of materials in the record" set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1)(A).  "Speculation and conclusory allegations do not satisfy [the non-moving party's] duty." Ridgewood Bd. of Educ. V. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999) (superseded by statute on other grounds).  Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Id.  Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

5

## IV. Analysis

### A. Malicious Prosecution Claim

To prevail on a malicious prosecution claim, the plaintiff must establish that:

(1) the defendant initiated a criminal proceeding;

(2) the criminal proceeding ended in the plaintiff's favor;

(3) the defendant initiated the proceeding without probable cause;

(4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and

(5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Rose v. Bartle, 871 F.2d 331, 349 (3d Cir. 1989).

Defendants' motions focus on the first, second, and third elements. Therefore, the Court addresses only those three factors below before reaching its conclusion.

### (1) Did Defendant Initiate a Criminal Proceeding

A plaintiff typically cannot recover under a "malicious prosecution" theory against a police officer because "a prosecutor, not a police officer, 'initiates' criminal proceedings against an individual." Stango v. Rodden, 2001 WL 1175131, at *4 (E.D. Pa. Aug. 21, 2001) (citations omitted). However, the Third Circuit has not "addressed the question of whether an investigating police official can be held liable under the Fourth Amendment as the initiator of a malicious prosecution." (Domenech v. City of Philadelphia, No. 06-cv-1325, 2009 WL 1109316, at *8 (E.D. Pa. Apr. 23, 2009), aff'd, 373 F. App'x 254 (3d Cir. 2010)). Courts in this district and in other circuits, however, have addressed the question and held that a plaintiff can proceed against an officer under a malicious prosecution theory if the officer "knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's

6

informed discretion." See id. (citing five cases in the Eastern District of Pennsylvania and three in federal appellate courts). This Court will employ the same standard.

Accordingly, the Court is tasked with examining all "evidence in the record to suggest that [Hulmes] misrepresented or concealed any material information in presenting the case to prosecutors." Stango, 2001 WL 1175131, at *4. Here, to support his claim for malicious prosecution, Plaintiff has presented three pieces of evidence: (1) his own deposition transcript; (2) Hulmes' disciplinary issue involving the accusation by an Assistant District Attorney that he had lied to her to protect a confidential informant; and (3) Hulmes' admission that he falsely testified under oath at a suppression hearing to protect a confidential informant.

Defendants claim that Bush's testimony is self-serving and thus, insufficient to create a genuine issue of material fact. At oral argument, the parties acknowledged that most deposition testimony is self-serving in some respect. Here, the Court views Mr. Bush's testimony in the light most favorable to him, which creates a genuine issue of material fact on this element. If Mr. Bush's testimony is credited, then Hulmes knowingly provided false information to the prosecutor.

In fact, "[s]elf-serving deposition testimony, standing alone, is sufficient to withstand a motion for summary judgment if, when compared to other evidence of record, a rational factfinder could credit the plaintiff's testimony, despite its self-serving nature." McBride v. Amer. Substance Abuse Prof., Inc., 917 F. Supp. 2d 419, 426-27 (E.D. Pa. 2013). Other evidence of record demonstrates that Hulmes is willing to lie under oath, so Mr. Bush's self-serving deposition testimony is potentially consistent with other evidence. In any event, whether Mr. Bush's testimony is credible is not for this Court to resolve, but rather a question for the jury.

## 2. Did the Criminal Proceeding End in Plaintiff's Favor

The *nolle prosequi* of Plaintiff's case was based on Hulmes' conduct in an unrelated matter, which called into question the process by which Plaintiff was convicted. Plaintiff bears the burden of showing that his criminal proceeding terminated "in favor of the accused," a burden which can be satisfied by a *nolle prosequi* only where the "final disposition is such as to indicate the innocence of the accused." Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002). The Third Circuit has explicitly stated that its "precedent is clear" on this issue:

> A nolle prosequi disposition is a favorable termination unless the accused has entered into a compromise or surrendered something of value to obtain that outcome. There is no evidence that [the plaintiff] obtained the nolle prosequi disposition through either of those avenues. . . . We thus conclude that [the plaintiff's] complaint should not have been dismissed based on his failure to satisfy the favorable termination prong.

Malcomb v. McKean, 535 F. App'x 184, 187 (3d Cir. 2013) (non-precedential).

Defendants have presented undisputed evidence that there was a *nolle prosequi* of Plaintiff's case. (See Hulmes Statement of Facts ("SOF"), ECF 26, ¶ 56; City SOF, ECF 27, ¶ 55). Defendants have also presented undisputed evidence that the *nolle prosequi* of Plaintiff's conviction was an exercise of prosecutorial discretion rather than pursuant to any agreement with Plaintiff, (City SOF, ¶ 57), and that Plaintiff's criminal docket does not indicate any reason for the *nolle prosequi* (Id. ¶ 56).

Defendant Hulmes claims that the Malcolm decision does not accurately reflect the Third Circuit's holdings on this issue, including most importantly its holding that "a nol pros signifies termination of charges in favor of the accused only when their final disposition is such as to indicate the innocence of the accused." Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002) (internal citation omitted).

There is sufficient evidence here to deny summary judgment on this element, because the final disposition in this case suggests the innocence of the accused. Although the District Attorney's Office did not state a reason for the release of Mr. Bush from prison, it strains credulity to think that the DA would release a convicted felon against whom they had proceeded through trial, without believing there to be a good chance that the person was factually innocent.

Here, the reason could have been that the principal witness at trial admitted to a judge that he lied under oath and was no longer credible. This rationale is not separable from the notion that Bush could be factually innocent of the crime for which he was convicted. After all, if Hulmes is "not credible" because he demonstrated a willingness to lie under oath, then it begs the question whether Hulmes lied against Mr. Bush. Mr. Bush is not able to go back in time to force a re-trial to obtain an acquittal. But he did not enter into an agreement to obtain his nol pros, nor give up anything in return, so a plausible explanation for his release, consistent with his deposition testimony, is that he is factually innocent. Again, this is not for the Court to decide, but rather the jury, which may choose not to credit Bush's testimony.

Thus, Plaintiff has met his burden with respect to the second element of his malicious prosecution claim.

### 3. Did Defendant Initiate the Proceeding Without Probable Cause

In an action for malicious prosecution, the plaintiff has the burden of proving that the defendant lacked probable cause when he initiated charges against the plaintiff. See Camiolo v. State Farm, 334 F.3d 345, 363 (3d Cir. 2003); Trabal v. Wells Fargo, 269 F.3d 243, 249 (3d. Cir. 2001). Probable cause to initiate a criminal proceeding "is proof of facts and circumstances that would convince a reasonable, honest individual that the suspected person is guilty of a criminal offense." Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993) (citations omitted). In

evaluating whether police officers had probable cause to arrest, courts focus on the facts and circumstances known to the officers at the time of the arrest. Courts consider whether "the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the plaintiff] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964); accord, Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000). While probable cause requires more than "mere suspicion" that a person has committed a crime, it does not require that the officer have sufficient evidence to prove guilt beyond a reasonable doubt. See United States v. Glasser, 750 F.2d 1197, 1205 (3d Cir. 1984). In the malicious prosecution context, the existence of probable cause to arrest establishes the existence of probable cause for any ensuing prosecution on those same charges. See, e.g., Eckman v. Lancaster City, 529 F.App'x 185, 187 (3d Cir. 2013) (holding that because probable cause existed for plaintiff's arrest, defendants were entitled to summary judgment on malicious prosecution claim); Gress v. Godshall, 170 F. App'x 217, 220 (3d Cir. 2006) ("[B]ecause the police had probable cause to arrest [plaintiff], his malicious prosecution claims must fail.").

For the reasons described supra, this Court credits Mr. Bush's testimony for purposes of these motions for summary judgment. Given his testimony, there was no probable cause for Mr. Hulmes to arrest Mr. Bush.

### B. Qualified Immunity

Hulmes contends that he is entitled to qualified immunity in this case because his conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Again, crediting Mr. Bush's testimony, Hulmes lacked probable cause to effectuate an arrest, and provided false information to the prosecutor (and later, to the jury). It is

10

clearly established that a police officer may not effectuate an arrest without probable cause. Mitchell v. Obenski, 134 F. App'x 548, 550 (3d Cir. 2005) ("There is a Fourth Amendment right to be free from arrest without probable cause, and this right is clearly established.").

However, Bush's allegations amount to an accusation of conduct even more serious than simply making an arrest without probable cause. If Bush's testimony is believed, which it is for purposes of these motions, then Hulmes may have deliberately lied in effectuating Bush's arrest. A reasonable officer in such a circumstance clearly would have known there was no probable cause to arrest Bush.

### V.     Monell Claim

Plaintiff's Monell claim falls well short of meeting his burden. The Third Circuit has explained that "absent the conscious decision or deliberate indifference of some natural person, a municipality, as an abstract entity, cannot be deemed to have engaged in a constitutional violation by virtue of a policy, a custom, or a failure to train." Simmons v. City of Phila., 947 F.2d 1042, 1063 (3d Cir. 1991) (superseded by statute on other grounds). Liability can only attach if record evidence demonstrates that the policymaker has made a deliberate choice to follow a particular course of action, leading to the constitutional deprivation. See Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986).

There are three ways to establish Monell liability where a constitutional violation has occurred.

The first method is where a plaintiff identifies either a "policy statement, ordinance, regulation or decision officially adopted and promulgated by the body's officers." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978). Plaintiff here has not

identified an officially adopted policy, ordinance, statute, regulation, or decision. Therefore, he may not establish municipal liability through this method.

The second method, sometimes called the City of Canton method, is where a plaintiff alleges that constitutional violations resulted from a failure to train or supervise its employees. See City of Canton, Ohio v. Harris, 489 U.S. 378, 380 (1989). To properly allege a City of Canton claim, the municipality's "failure to train [must] reflect[ ] deliberate indifference to constitutional rights." Id. at 392. As the Third Circuit stated in Carter v. City of Phila., 181 F.3d 339 (3d Cir. 1999), to demonstrate deliberate indifference on the part of a municipality, a plaintiff must show that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Id. at 357 (citations omitted). Plaintiff does not make a genuine attempt to rely on the City of Canton method for establishing the City's liability here. However, in a single sentence in opposition to the City's Motion for Summary Judgment, Plaintiff writes: "Alternatively, the City of Philadelphia has ineffective supervisory and investigative apparatuses which allowed Defendant Hulmes to admit to perjury in open court without anything being done for years . . . ." (ECF 30, at 12). This argument fails on all three of the Carter elements discussed above, as there is no evidence showing that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." 181 F.3d at 357.

The third method is where a plaintiff identifies "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval

12

through the body's official decisionmaking channels." Id. at 691. In support of Plaintiff's contention that there is a "custom of Constitutional-violating action by Defendant the City of Philadelphia and its policing apparatus," (ECF 30, at 12), Plaintiff attaches a report by Dr. McCauley. (See ECF 30, Ex. E). However, Dr. McCauley's report may not be considered at this stage, as it is unsworn and thus "not competent to be considered on a motion for summary judgment." Deuber v. Asbestos Corp. Ltd., No. 10-cv-78931, 2012 WL 7761244 (E.D. Pa. Oct. 15, 2012) (quoting Fowle v. C&C Cola, 868 F.2d 59, 67 (3d Cir. 1989). Plaintiff's evidence is inadequate to establish a genuine dispute of material fact, as even if Plaintiff's evidence is credited, there is no demonstration of: (1) a deliberate indifference on the part of a specific policymaker; (2) a custom of "non-cooperation" in PPD in relation to PPD officer malfeasance, despite formal policies to the contrary; (3) evidentiary support for any of Bush's Monell allegations; and (4) acquiescence by PPD with respect to prior Constitutional violations.

## VI. Conclusion

Therefore, Defendant City of Philadelphia's Motion for Summary Judgment (ECF 27) is GRANTED. Defendant Hulmes' Motion for Summary Judgment (ECF 26) is DENIED.

O:\CIVIL 17\17-805 Bush v Hulmes\Memo re Motion for Summary Judgment.docx

13